[Cite as *State v. Walton*, 2018-Ohio-4021.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106103**


## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## KAREEM WALTON

DEFENDANT-APPELLANT


**JUDGMENT:**
APPLICATION DENIED


Cuyahoga County Court of Common Pleas
Case No. CR-16-607989-A
Application for Reopening
Motion No. 519983

**RELEASE DATE:**   October 1, 2018

**[Cite as *State v. Walton*, 2018-Ohio-4021.]**
**FOR APPELLANT**

Kareem Walton, pro se
Inmate No. A700960
Southern Ohio Correctional Facility
P.O. Box 45699
Lucasville, Ohio 45699


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By:   Anthony T. Miranda
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Applicant, Kareem Walton, pursuant to App.R. 26(B), seeks to reopen his appeal in *State v. Walton*, 8th Dist. Cuyahoga No. 106103, 2018-Ohio-1963. He asserts that appellate counsel was ineffective for failing to raise and argue an assignment of error regarding the trial court's decision on Walton's motion to suppress. After a thorough review of the arguments and the record, we deny the application.

## I. Factual and Procedural History

{¶2} Walton was driving a vehicle that was occupied by five victims. Walton crashed the vehicle into a tree, killing three of the passengers. In the direct appeal, Walton's attorney filed a no-merit brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and Walton filed his own pro se brief pursuant to Loc.App.R. 16(C). Walton raised issues surrounding his plea agreement and the sentence imposed. This court affirmed his convictions for aggravated vehicular homicide, aggravated vehicular assault, and driving under the influence of alcohol or drugs.

{¶3} Walton timely filed an application for reopening pursuant to App.R. 26(B), arguing a single proposed assignment of error:

> Appellate counsel was ineffective and his performance felled [sic] below professional standards by failing to raise abuse of discretion by the lower court when it denied appellant's motion to suppress.

## II. Law and Analysis

## A. Application for Reopening

{¶4} An application for reopening, pursuant to App.R. 26(B), provides a means to raise an ineffective assistance of appellate counsel claim in a criminal appeal. The analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for ineffective assistance of counsel is the appropriate standard to assess whether Walton has raised a "genuine issue" as to the ineffectiveness of appellate counsel in his request to reopen under App.R. 26(B)(5). *See State v. Spivey*, 84 Ohio St.3d 24, 25, 701 N.E.2d 696 (1998). To show ineffective assistance, Walton must demonstrate that his counsel was deficient in failing to raise the issues he now presents and that there was a reasonable probability of success had the claims been presented on appeal. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus.

{¶5} A claim of ineffective assistance of appellate is not available where an appellant acts pro se in an appeal. *State v. Thornton*, 8th Dist. Cuyahoga No. 76014, 2000 Ohio App. LEXIS 1037 (Mar. 9, 2000); *State v. Westbrook*, 4th Dist. Scioto No. 11CA3455, 2012-Ohio-6292. The state argues that because Walton acted pro se in his direct appeal, his claim of ineffective assistance should be denied because he failed to raise the issue there. In *Westbrook*, the Fourth District held:

> If a petitioner alleges errors that he raised on direct appeal or could have raised on direct appeal, then the doctrine of res judicata bars the claim for post-conviction relief. *State v. Bradley*, [4th Dist. Scioto No. 98CA2592, 1999 Ohio App.LEXIS 1469 (Mar. 30, 1999)]. "[T]he doctrine serves to preclude a defendant who has had his day in court from seeking a second on that same issue. In so doing, res judicata promotes the principles of finality and judicial economy by preventing endless relitigation of an issue

on which a defendant has already received a full and fair opportunity to be heard." *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 18. Because Westbrook had a prior opportunity to litigate the claims that he sets forth in his pro se arguments, they are also barred under the doctrine of res judicata. *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus.

*Id*. at _ 15.

{¶6} Appellee argues Walton could have raised the current claims in his direct appeal, and chose not to. Accordingly, res judicata could bar litigating those claims here.

{¶7} However, appellate counsel filed an *Anders* brief, and Walton was forced to proceed pro se. Under these circumstances, it may be inequitable to apply the doctrine of res judicata. For instance, the First District addressed claims of ineffective assistance of appellate counsel in *State v. Fain*, 188 Ohio App.3d 531, 2010-Ohio-2455, 936 N.E.2d 93 (1st Dist.). However, in that case, it is not clear whether the appellant filed a pro se brief, or whether the First District's procedure allowed for the filing of a pro se brief. In any event, whether the doctrine of res judicata applies to the present application is not a necessary determination for this case, as the application fails on the merits.

### B. Denial of Motion to Suppress

{¶8} A suppression hearing was held on June 12, 2017. Two expert witnesses appeared to testify about whether the results of blood tests did or did not show Walton was impaired at the time of the crash. Walton argued that the results were incorrect because severe trauma could release chemicals in the blood that would lead to a false

positive or elevated test results for the presence of alcohol in the bloodstream. The state asserted that the attack on the evidence was an attack on the results, and went to their weight or credibility, not admissibility.

{¶9} The state's expert witness, Dr. Christine Schmotzer, opined about the results of blood tests and whether they accurately captured the amount of alcohol Walton consumed. Those values ranged from 33 mg/dl to 31 mg/dl in whole blood. The assay test used by the lab measured a byproduct of an enzymatic reaction. The test is subject to a 10 to 15 percent variability. As a result, she opined that for criminal liability purposes, the result is reduced by the variance factor and then converted to blood alcohol content. In this case, that would result in a blood alcohol content of 0.028 mg/dl at the minimum end. She stated that this is greater than the 0.02 mg/dl legal limited for drivers between the age of 18 and 21 years old.

{¶10} Addressing the concerns raised by Walton in his motion to suppress, that lactic acid and other byproducts of trauma to the body would elevate the results of the test used by the lab, Dr. Schmotzer testified that the assay she used was less susceptible to this interaction, but could not quantify the level of interference. She did indicate that certain studies demonstrated the generation of chemicals that interfere with the test as a result of trauma, but others did not. Finally, she opined that, within a reasonable degree of scientific certainty, the results demonstrate that Walton's blood alcohol level was above 0.02 mg/dl for whole blood as prohibited by R.C. 4511.19(B).

{¶11} Walton called his own expert, Dr. Fred Staubus. Dr. Staubus disagreed with Dr. Schmotzer's analysis, and opined that Walton's results were actually under the legal limit. He further argued that using the testimony of Dr. Schmotzer, the test results were so close to the legal limit that the results were within the bounds of susceptibility of interference from trauma. As a result, he opined the tests could not show beyond a reasonable doubt that Walton was above the legal limit set forth in R.C. 4511.19(B).

{¶12} The trial court found that the issues raised in the motion to suppress went to the weight of the evidence, and denied the motion. Walton now argues that appellate counsel should have raised an assignment of error regarding this decision, rather than filing an *Anders* brief.

{¶13} There is no indication that the trial court erred in determining that the arguments raised were an attack on the credibility of the evidence, not its admissibility. Both expert witnesses testified that the test used in the hospital laboratory could generally determine the presence of alcohol in a blood sample, but they disagreed on the meaning of the results and whether the results indicated, within a reasonable degree of scientific certainty, what Walton's blood alcohol content was at the time the sample was analyzed. This goes to the weight of the evidence. Walton's expert disagreed with the findings of the state's witness and indicated that a further reduction in the result should have been factored in as a result of chemicals that the body produces during trauma that could elevate the results.

{¶14} Again, this goes to the credibility of the evidence and the weight that the finder of fact should give it. Walton did not demonstrate that the test was sufficiently unreliable that the results should be excluded. Therefore, Walton has not demonstrated a colorable claim of ineffective assistance of appellate counsel.

{¶15} Application denied.


_____
FRANK D. CELEBREZZE, JR., JUDGE

SEAN C. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR